UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL K. UPSHAW,

        Plaintiff,

                                File No. 1:12-cv-1300

v.

                                HON. ROBERT HOLMES BELL

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.

_____/

## O P I N I O N

Plaintiff Michael K. Upshaw, a former prisoner incarcerated by the Michigan Department of Corrections (MDOC), brought this action against the MDOC and several MDOC officials because he was incarcerated for 968 days after his sentence expired. After dismissal of most of the defendants by stipulation, the remaining defendants are: Raymond Tamminga, a former Deputy Warden at the Charles Egeler Reception and Guidance Center (RGC); Bonnie Kenzie, an employee in the MDOC's Time Computation Unit (TCU); Tracie Peek, a Departmental Tech for the TCU; Connie Trevino, Records Audit Specialist for the TCU; and Diana Judge, Records Administrator for the TCU. Before the Court is Defendants' motion for summary judgment (ECF No. 48), and Plaintiff's response thereto (ECF No. 50). Defendants have also filed a reply in support of their motion (ECF No. 51). For the reasons discussed herein, Defendants' motion will be denied.

## I.

On April 16, 1997, Plaintiff pleaded guilty in Oakland County Circuit Court to: armed robbery, Mich. Comp. Laws § 750.529 (Count I); possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b ("felony firearm") (Count II); being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f ("felon-in-possession") (Count III); and being a habitual offender, third offense, Mich. Comp. Laws § 769.11 (Count IV). The court issued a sentence of imprisonment of 6 to 20 years for the armed robbery offense, 5 to 10 years for the felon-in-possession offense, and a two-year consecutive sentence for the felony-firearm offense. The court then vacated the sentences for armed robbery and felon-in-possession and issued a 5 to 10 year sentence on the habitual offender charge, with a two-year consecutive sentence for the felony-firearm offense and 188 days of credit for time served. (*See* J. of Sentence, ECF No. 31-1.) The portion of the judgment describing the sentences reads as follows:

| CNT | SENTENCE DATE | MINIMUM | | | MAXIMUM | | SENTENCE BEGINS | JAIL CR | | OTHER INFO |
|---|---|---|---|---|---|---|---|---|---|---|
| | | YRS | MOS | DAYS | YRS | MOS | | MOS | DAYS | |
| 1 | 04/16/97 | 6 | | | 20 | | VACATED | | | |
| II | 04/16/97 | | | | 2 | | | | 188 | CONSECUTIVE TO CTS I |
| III | 04/16/97 | 5 | | | 10 | | VACATED | | 188 | III AND IV |
| IV | 04/16/97 | 5 | | | 10 | | 04/16/97 | | 188 | |

(*Id.* at PageID.279.)

After the judgment issued, Plaintiff was confined at the RGC. Plaintiff alleges that Defendants Peek and Kenzie were responsible for reviewing the judgment and calculating a maximum discharge date, and that Defendant Tamminga was responsible for supervising

2

them. Plaintiff alleges that Peek and/or Kenzie determined that the judgment did not accurately reflect Plaintiff's *intended* sentence and informed Tamminga. On May 8, 1997, Tamminga sent a letter to the sentencing judge, stating:

> The judgment of sentence that we received has vacated counts I and III for a habitual 3rd, however, count IV which is the habitual, has indicated a lessor [sic] term of 5 years to 10 years than the initial term of six years to 20 years. Was it the courts [sic] intent to have the habitual as less time? Please review your records and if necessary, amend and advise.

(Letter, ECF No. 31-3, PageID.284.) No response to the letter was ever received. And although Plaintiff's sentence "indicated a less[e]r term of 5 years to 10 years," it was entered into the MDOC's records as a sentence of 6 to 20 years. Plaintiff alleges that neither Tamminga, Kenzie, nor Peek took any further action to correct the MDOC's records or to follow-up with the sentencing court.

In September 2010, an audit of Plaintiff's sentencing records discovered an "error" in the calculation of his sentence. (Judge Aff. ¶ 9, ECF No. 51-3.) On September 28, 2010, Defendant Trevino sent an email with a copy of the judgment of sentence to the chambers of the judge to whom Plaintiff's criminal case was originally assigned, asking "whether the court really vacated Ct #1 (6y - 20y sentence) and imposed a lesser term of 5y- 10y sentence on the Ct. #4 (habitual offender 3rd)." (Email, ECF No. 28-2, PageID.232-33.) Court staff responded that they would check their records.

Over a month later, on November 1, 2010, Defendant Trevino sent a letter to the new judge assigned to Plaintiff's case, asking for review of the judgment:

The Judgment imposed the following sentences:

| | | |
|---|---|---|
| Ct #1 - Armed Robbery | 6 year to 20 years | *vacated* |
| Ct #2 - Weapon-Felony Firearm | 2 years to 2 years | |
| Ct #3 - Felon Poss Firearm | 5 years to 10 years | *vacated* |
| Ct #4 - Habitual Offender 3rd . . . | 5 years to 10 years | |

During a routine review of the sentencing documentation prior to [Plaintiff's] upcoming parole, it was noted the term imposed on Ct #4 Habitual Offender 3rd Conviction (5 years to 10 years) is less than the term imposed on Ct #1 for Armed Robbery (6 years to 20 years).

Our records show that we addressed this with the court in May, 1997, however, no amended judgment has ever been issued. Therefore, at this time we would request the court's review to determine if clerical error exists with regard to the term imposed on the Ct #4 Habitual Offender 3rd Conviction.

We currently have entered the Armed Robbery as the 6 year to 20 year sentence, but need documentation to support this, or need an amended [sic] clarifying the sentence which should be entered. Please note if it is determined the term should actually have been 5 years to 10 years for the Robbery Armed, then we would request immediate notification as this would result in his immediate release from prison.

If the court finds an amended Judgment is warranted, it is requested one be completed so we may review our time computation and release dates. If resentencing is necessary to accomplish this, it is requested this process be considered and/or initiated.

However, if the court finds no amended Judgment will be issued, it is requested we receive notification of same, via email or letter, [ ] so we may resolve this matter in our records and not contact the court again.

Any amended judgment should be sent to this writer at the address below. . . .

(11/1/2010 Letter, ECF No. 51-3, PageID.458-59.)

On November 18, the court responded that it had confirmed with the prosecutor's office that the 5 to 10-year sentence was correct. (Items for Discussion W/Diana, ECF No.

4

29-2, PageID.245; *see also* handwritten note, ECF No. 29-1, PageID.243.) However, court staff were still attempting to retrieve a videotape of the sentencing hearing. (*Id.*) On or about November 22, Defendants Trevino and Judge decided to wait another week to see what the videotape would show. (*Id.*) Judge wrote that the sentence was "so unique and not understandable. Why habitualize and reduce sentence?" (*Id.*) On November 24, Trevino again contacted court staff, who advised that they were having trouble locating the videotape. (Emails, ECF No. 51-3, PageID.460-61.) A few hours later, Trevino sent an email withdrawing the request for the videotape and explaining that the MDOC would have to release Plaintiff because they "have no other choice but to process the Judgment as it is written, and as the Prosecutor's Office has verified[.]" (*Id.* at PageID.460.) Defendants then waited for several more days, until after the Thanksgiving holiday, to begin processing Plaintiff's release papers. (*See* Case Notes, ECF No. 51-3, PageID.462 ("On 11/24/10 . . . it was determined we would proceed w/ recalculating the sentences on 11/29/10 as the court ordered and the court confirmed and would release.").) Plaintiff was released on November 29, 2010.

## II.

Rule 56 of the Federal Rules of Civil Procedure requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). When such a motion is filed by the defendant, as in this case, the "plaintiff must do more than rely merely on the allegations of her pleadings or identify a 'metaphysical doubt' or hypothetical 'plausibility' based on a lack of evidence; [a plaintiff] is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits[.]'" *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586-87). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989). Where a defendant seeks summary judgment on an affirmative defense on which it will bear the ultimate burden of proof at trial, summary judgment is proper "'only if the record shows that [the defendant] established the defense so clearly that no rational jury could have found to the contrary.'" *Beck–Wilson v. Principi*, 441 F.3d 353, 365 (6th Cir. 2006) (quoting *Buntin v. Breathitt Cty. Bd. of Educ.*, 134 F.3d 796, 800 (6th Cir. 1998)).

Defendants have asserted the defense of qualified immunity to Plaintiff's claims under 42 U.S.C. § 1983. "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.'"

6

*LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged or shown that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.'" *Thompson v. City of Lebanon, Tenn.*, No. 14-5711, 2016 WL 4011166, at *2 (6th Cir. June 26, 2016); *see Holsey v. Wieber*, 811 F.3d 844, 846 (6th Cir. 2016).

7

The Supreme Court has explained the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

*Brosseau v. Haugen,* 543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is 'whether the violative nature of the particular conduct is clearly established.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has emphasized that the second prong of the qualified immunity analysis "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201). Moreover, courts are "not to define clearly established law at a high level of generality, since

doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 134 S. Ct. at 2023 (citations and quotations omitted); *see also Perez v. Oakland County*, 466 F.3d 416, 428 (6th Cir. 2006) ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'").

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 134 (6th Cir. 2014).

## III.

Defendants seek summary judgment on Plaintiff's claims under § 1983. In Count I, Plaintiff contends that his confinement after the expiration of his sentence was an unlawful seizure under the Fourth Amendment, and deprived him of liberty without due process in violation of the Fourteenth Amendment. In Count II, he contends that confinement after the expiration of his sentence was excessive, cruel, and unusual, in violation of his rights under the Eighth Amendment.[1]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation

---

[1] In Counts III and IV of the complaint, which are not at issue in Defendants' motion, Plaintiff asserts claims of gross negligence and intentional infliction of emotional distress.

was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants do not dispute that they acted under color of state law.

The constitutional right at issue in this case is "beyond dispute: when a prisoner's sentence has expired, he is entitled to release." *Shorts v. Bartholomew*, 255 F. App'x 46, 51 (6th Cir. 2007). "[A]n incarcerated inmate has a 'liberty interest in being released at the end of his term of imprisonment.'" *Id.* (quoting *Schultz v. Egan*, 103 F. App'x 437, 440 (2d Cir. 2004)). "This liberty interest is most often attributed to the Due Process Clause of the Fourteenth Amendment." *Id.* (citing cases). But courts have also recognized that the Eighth Amendment might be implicated. *See Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989) (citing *Hutto v. Finney*, 437 U.S. 678, 685 (1978)) (Eighth Amendment); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc) (Eighth Amendment).

**A. Eighth Amendment**

Regarding Plaintiff's Eighth Amendment claim, the parties agree that the deliberate indifference standard applies. *See Shorts*, 255 F. App'x at 55.

> To establish § 1983 liability in this context, a plaintiff must [1] first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. [2] Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. [3] Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Id.* (quoting *Sample*, 885 F.2d at 1110).

10

Defendants assert that they are entitled to summary judgment because "[t]here is no evidence that any MDOC official knew that Plaintiff's sentence was in error and took no steps to correct the error[.]" (Defs.' Br. 4, ECF No. 49.) According to Defendants, they discovered the error and then took steps to obtain clarification from the state court; they cannot be held responsible for the delay in Plaintiff's release because "the sentencing court was the only entity with the ability to correct the sentencing error and release Plaintiff but did not do so in a timely manner." (*Id.*)

The most glaring flaw in Defendants' argument is that there was no error in the sentence. Defendants merely assumed that there was. The error was committed by Defendants' in their application of the sentence. Rather than apply the judgment as it was actually written, Defendants applied it as they thought it should be. Defendants had the authority to correct their error without intervention by the state court, as they eventually did. Plaintiff was released even though the state court never corrected or modified its judgment. Thus, the issue is not whether Defendants were aware of a non-existent error in the judgment of sentence, but (1) whether they were aware of the risk that Plaintiff would be subjected to unwarranted punishment, and (2) whether their actions were ineffectual under the circumstances to respond to that risk.

### (1) Knowledge of the Risk

Deliberate indifference requires that the defendant have knowledge of the risk of unwarranted punishment. Defendants contend that they were confused about the meaning of the judgment and needed clarification from the sentencing court. The evidence suggests

11

otherwise. First, the judgment itself is plain. It clearly states that the 6 to 20 year sentence was vacated, and that the 5 to 10 year sentence on the habitual offender count commenced on April 26, 1997. Defendants have not offered any plausible way of reading it differently. Defendants apparently thought that this sentence was unusual; however, they did not have authority to change it or to apply it differently from the way it was written.

Second, Defendants' own statements and actions indicate that they were aware of the judgment and understood its meaning. In 1997, Tamminga's letter acknowledged that the judgment "indicated" a 5 to 10-year term. (Letter, ECF No. 31-3, PageID.284.) It also implied that an amendment would be necessary to reflect a longer sentence.

Similarly, in September 2010, Trevino understood that the judgment had vacated the longer sentence, though she queried whether it had "really" done so. In a letter approximately one month later, she acknowledged that the 6 to 20-year sentence was vacated and that the MDOC needed "documentation to support" Plaintiff's continued confinement. (*See* Letter, ECF No. 51-3, PageID.458.) She also acknowledged the 5 to 10-year sentence in the habitual-offender count, but she suggested that this was a "clerical error" on the part of the court. (*Id.*) Like Tamminga, she asked the Court to either provide documentation supporting the longer sentence (e.g., an amended judgment), or to notify her that the 5 to 10-year sentence was correct. (*See id.*) Finally, when deciding that Plaintiff should be released, she conceded that Defendants would have to apply the judgment "as it is written." (11/24/2010 Email, ECF No. 51-3, PageID.460.)

12

Based on the foregoing, a reasonable juror could conclude that Defendants understood the sentence and knew how to apply it, but refused to do so. And even if Defendants were confused about how to apply the sentence, the evidence indicates that they were aware of the *risk* that Plaintiff could be, or was being, confined after the expiration of his sentence. *See Shorts*, 255 F. App'x at 55.

### (2) Ineffectual Action

The evidence also suggests that Defendants failed to take action, or took ineffectual action, to address the "risk" of unwarranted punishment. After sending a letter to the court in 1997, there is no evidence that Tamminga, Kenzie, or Peek waited for an amended judgment or any other response from the court. If they had doubts about what the court intended, they could have assumed that the court intended to issue the sentence that was written on the judgment, until they heard otherwise from the court. Instead, they apparently chose to enter a longer sentence into the MDOC's records and then did nothing further about it.[2]

Similarly, in 2010, despite an audit report recognizing an error in the calculation of Plaintiff's sentence, and a lack of documentation to support Plaintiff's continued confinement, Defendants Trevino and Judge allowed him to be confined for two additional months. Defendants contend that they were required to weigh the risk of releasing Plaintiff prematurely, and that they needed time to confirm whether their understanding of the

---

[2]At this stage, it is not clear who made the decision to enter Plaintiff's sentence as a 6 to 20-year sentence, or what Defendants Tamminga, Kenzie, and Peek's respective roles were in 1997.

13

sentence was correct. This argument would have more force if the sentence in this case was ambiguous or unclear. But that does not appear to have been the case. Trevino herself acknowledged that the sentence, as written, provided for a maximum of 10 years. That is how she should have applied it. She lacked authority to extend Plaintiff's confinement based on a belief that it might contain a clerical error. The risk of early release due to a possible clerical error fell upon the court that entered the judgment, not the officers charged with implementing it. Prison officials are not expected to identify and fix latent errors in a judgment of sentence; that is the responsibility of the sentencing court and the parties involved in the criminal proceedings. By acting as if an ostensibly unambiguous sentence was incorrect, Defendants did not merely fail to address the risk of unwarranted punishment, they created it.

Moreover, even if there was a reasonable doubt about the meaning of the sentence such that clarification from the court was necessary, it is hard to justify waiting a month after contacting the sentencing court before following up with a letter. It is even harder to justify delaying Plaintiff's release after receiving confirmation from the court and the prosecutor that the sentence was correct. And it is even harder still to justify Defendants' decision, made after they agreed that Plaintiff should be released, to keep Plaintiff confined, illegally, for at least four more days before processing his release. *Cf. Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 276 (D.D.C. 2011) ("[C]ourts appear to agree that the maximum permissible administrative delay in the overdetention context likely falls well short of the 48-hour horizon[.]"); *Davis v. Hall*, 375 F.3d 703, 713 (8th Cir. 2004) ("[E]ven a thirty-minute

detention after being ordered released could work a violation of a prisoner's constitutional rights under the Fourteenth Amendment.").

In short, the evidence is more than adequate for a reasonable juror to find that Defendants failed to act, or took ineffectual action, after becoming aware of the "risk" that Plaintiff would be, or was being, confined illegally.[3]

### B. Fourteenth Amendment

Defendants argue that Plaintiff's Fourteenth Amendment claim cannot succeed because he did not protest the unlawfulness of his excessive confinement, citing *Baker v. McCollan*, 443 U.S. 137 (1979). In *Baker*, an arrest warrant mistakenly identified the plaintiff, who was arrested and detained pursuant to the warrant despite his protests that the police had arrested the wrong person. The Supreme Court assumed, for purposes of its opinion, that detention pursuant to an arrest conforming with the Fourth Amendment might give rise to a Fourteenth Amendment violation in the face of "repeated protests of innocence," after "the lapse of a certain amount of time[.]" *Id.* at 145. In that case, however, the plaintiff's detention for three days over a New Year's weekend "does not and could not" amount to a deprivation of a liberty interest without due process of law. *Id.* The Court reasoned that an arrest warrant provides sufficient process to detain an individual for a brief period of time. Although the warrant in that case identified the wrong individual, the division

---

[3]In their reply, Defendants assert that there is no evidence that Defendants Kenzie or Peek were personally involved in making a computation about Plaintiff's sentence. This argument was not raised in Defendants' initial motion or brief in support thereof, however, and the Court need not consider it. *See Irwin Seating Co. v. Int'l Business Machines Corp.*, No. 1:04-CV-568, 2007 WL 518866, *2 n.2 (W.D. Mich. Feb. 15, 2007) (noting that arguments raised for the first time in a reply brief are waived and that the district court need not consider them).

of functions between "law enforcement officers" and "judicial officers" was a "reasonable" one, such that an arresting officer could not be held liable for failing to independently investigate a claim of innocence. *Id.* at 145-46. Similarly, Defendants argue that they should not be required to act as "legal advocates for every prisoner who asserts the vague complaint that there exists an unknown error in the calculation of his sentence." (Defs.' Br. 6, ECF No. 49.)

Defendants' reliance on *Baker* is misplaced. First, this Court is aware of no authority that requires a "protest" in order to trigger a claim for the deprivation of liberty without due process. *Baker* does not support such a requirement. In that case, the Court held that the arrest warrant provided sufficient process for the brief period of detention at issue. The fact that the plaintiff protested his detention was not material to the Court's decision.

Second, *Baker* is distinguishable from this case. Unlike *Baker*, the error in this case was not contained in the document prepared by a judicial officer (i.e., the arrest warrant or the judgment of sentence); rather, the error was committed by the officers charged with implementing it. If Defendants had followed the plain meaning of the judgment of sentence, like the arresting officer in *Baker* followed the warrant, they might not be liable. Instead, it appears that they substituted their own judgment for that of the court. Whether Plaintiff protested his confinement or not, Defendants had no authority to continue his incarceration beyond the expiration of his sentence. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 246 (1972) ("[W]hen his sentence expired, the State lost the power to hold him, and . . . his continued detention violates his rights under the Fourteenth Amendment."); *Whirl v. Kern*,

407 F.2d 781, 791 (5th Cir. 1969) (holding that "[t]here is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence").

Finally, Defendants are wrong to characterize this case as a failure to act in response to an "unknown error" in the calculation of a sentence. The error at issue in this case was not unknown. At the very least, Defendants Tamminga, Trevino, and Judge knew that it was, or could be, wrong to treat Plaintiff's sentence as a 6 to 20-year sentence.

## C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because Plaintiff has not demonstrated a violation of his constitutional rights. The Court disagrees for the reasons already stated. In addition, as to the second prong of the qualified immunity analysis, the right not to be held past the expiration of a sentence is clearly established.

Defendants also assert that there is no record that Plaintiff ever put them on notice of an error in the calculation of his sentence. Even assuming that to be true, however, there is evidence that Defendants were already aware of the error. Consequently, it was not necessary for Plaintiff to put them on notice of it. In short, Defendants' arguments are without merit. On the record before the Court, they are not entitled to qualified immunity.

## D. Summary Judgment for Plaintiff

In his response to Defendants' motion, Plaintiff asks the Court to grant summary judgment in his favor, even though he did not file a motion requesting it. "[A]lthough 'a district court should only enter summary judgment in the absence of a cross-motion with great caution . . . the fact that the nonmoving party has not filed its own summary judgment

motion does not preclude the entry of summary judgment if otherwise appropriate.'" *Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 932 (6th Cir. 2000) (quoting *K.E. Res., Ltd. v. BMO Fin. Inc. (In re Century Offshore Mgmt. Corp.)*, 119 F.3d 409, 412 (6th Cir. 1997)); *see Celotex Corp.*, 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.").

The Court declines to enter summary judgment in Plaintiff's favor. Defendants have not been notified of the need to present evidence respecting every element of Plaintiff's claims against them. In particular, the involvement of Defendants Kenzie and Peek is still unclear. Also, the parties have not briefed or argued Plaintiff's claims arising under state law. Thus, summary judgment is not warranted.

## IV.

For the reasons stated, Defendants are not entitled to summary judgment. A reasonable juror could find that Defendants confined Plaintiff past the expiration of his sentence, without authority to do so. In addition, a reasonable juror could find that Defendants were aware of, and deliberately indifferent to, the risk that Plaintiff would be, or was being, confined past the expiration of his sentence. Defendants' arguments in favor of qualified immunity are without merit. Thus, their motion will be denied.

An order will be entered consistent with this Opinion.

Dated: November 3, 2016          /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 UNITED STATES DISTRICT JUDGE